NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| THE COUNTY OF HUDSON, et al., | : | Civil Action No. 06-319 (JAP) |
| Plaintiffs, | : | |
| v. | : | |
| ROBERT C. JANISZEWSKI, et al., | : | OPINION & ORDER |
| Defendants. | : | |

Bongiovanni, Tonianne J., U.S.M.J.

      Currently pending before the Court are the following motions filed by Defendants/Third-Party Plaintiffs Oscar Sandoval, M.D.; Oscar Sandoval, M.D., P.C.; and Hudson County Psychiatric Associates (the "Sandoval Defendants"): (1) a Motion for Reconsideration of the Court's April 18, 2007 Order dismissing without prejudice the Sandoval Defendants' Motion to Amend their Third-Party Complaint, pending the Court's conclusion of settlement discussions [Docket Entry No. 120]; and (2) the Sandoval Defendants' Motion to Amend their Third-Party Complaint, which the Court now reinstates [Docket Entry No. 107]. The Sandoval Defendants seek to amend their Third-Party Complaint to add two new Third-Party Defendants: Senator Robert Menendez and Vicente Ruiz. For the reasons stated below, the Sandoval Defendants' Motion to Amend their Third-Party Complaint is denied. Further, because the Court now considers the Sandoval Defendants' Motion to Amend, it finds that their Motion for Reconsideration is moot and therefore dismisses it as such.

I.    **Background**

On January 20, 2006, Plaintiffs the County of Hudson; Thomas A. Degise in his official capacity as Hudson County Executive; the Board of Chosen Freeholders of the County of Hudson; and the Hudson County Improvement Authority ("Plaintiffs") filed a Complaint against Robert C. Janiszewski, and numerous other Defendants, including the Sandoval Defendants. In their Complaint, Plaintiffs claim that the Defendants, including the Sandoval Defendants, paid bribes and/or gratuities to Defendant Janiszewski in return for the award or renewal of contracts with the County of Hudson or the Hudson County Improvement Authority, or for special consideration or other favors. Based on this alleged illegal activity, Plaintiffs seek damages for violations of the Federal Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and the New Jersey RICO statute, N.J.S.A. § 2C:41-2, as well as for the following violations of New Jersey common law: fraud, unjust enrichment, breach of contract, breach of the implied covenant of good faith and fair dealing, conversion, breach of fiduciary duty, and aiding the commission of a tort.[1]

On March 13, 2006, the Sandoval Defendants filed an Answer to Plaintiffs' Complaint denying participation in the corrupt scheme alleged by Plaintiffs, and on March 24, 2006, they filed a Third-Party Complaint and Cross-claim against Defendant Janiszewski and Third-Party Defendants Donald Scarinci, Richard Myrlak, Geoffrey Perselay, Abraham Antun, Robert Murray and John Does (1-20). In their Third-Party Complaint and Cross-Claim, the Sandoval Defendants allege that Defendant Janiszewski and the Third-Party Defendants violated the

---

[1]Plaintiffs also named Western Surety Company ("Western") as a Defendant. However, Plaintiffs sued Western for the sole purpose of seeking a declaratory judgment regarding Western's obligations pursuant to certain fidelity bonds issued for the benefit of Hudson County.

federal RICO statute when they retaliated against the Sandoval Defendants by threatening to and in fact terminating and denying approval of the Sandoval Defendants' contracts with Hudson County because of the Sandoval Defendants' reluctance to make political contributions and other payments to them, and because Dr. Sandoval exposed some of their allegedly corrupt behavior.

The Sandoval Defendants now seek leave to amend their Third-Party Complaint in order to name two additional Third-Party Defendants: Senator Robert Menendez and Vicente Ruiz.[2] Neither Senator Menendez nor Mr. Ruiz were named in the original Third-Party Complaint and Cross-claim, though both were mentioned in various allegations contained therein. The Sandoval Defendants' proposed amendments do not seek to alter the main thrust of their Third-Party Complaint. Indeed, the proposed Amended Third-Party Complaint still seeks damages based on Defendant Janiszewski's and the Third-Party Defendants' alleged violations of the federal RICO statute. The difference, however, is that the Amended Third-Party Complaint would include Senator Menendez and Mr. Ruiz as Third-Party Defendants.

The Sandoval Defendants claim that "there is no good reason to deny" their Motion to

---

[2]The Sandoval Defendants initially filed their Motion to Amend their Third-Party Complaint on October 25, 2006. However, after the Motion had been fully briefed by the parties, the Court initiated settlement discussions, and on April 18, 2007, noting its intent to continue settlement discussions with the parties as well as New Jersey's strong public policy in favor of settlements (*see Bistricer v. Bistricer*, 555 A.2d 45, 47 (N.J. Super. Ct. Ch. Div. 1987)), dismissed without prejudice the Sandoval Defendants' Motion to Amend and ordered that their Motion would be deemed "refiled if it appear[ed] that the parties' discussions w[ould] not result in a disposition of this mater." [Docket Entry No. 119]. As it now appears that the parties discussions will not result in the disposition of this matter, the Court deems the Sandoval Defendants' Motion to Amend to be "refiled" and considers it herein. The Court also notes that on May 4, 2007, the Sandoval Defendants filed a Motion for Reconsideration of the Court's April 18, 2007 Order, which dismissed without prejudice their Motion to Amend. [Docket Entry No. 120]. Since the Court now considers the Motion to Amend, it finds that the Motion for Reconsideration is moot.

Amend and, as such, it should be granted based upon FED.R.CIV.P. 15(a) and the United States Supreme Court's decision in *Foman v. Davis*. 371 U.S. 178 (1962) (noting that leave to amend the pleadings is generally "freely given"). (Espinosa. Cert. ¶ 7.)  They argue that their motion is not the byproduct of bad faith, undue delay or other dilatory motive, and that there have not been repeated failures to cure deficiencies by previously allowed amendments. (Espinosa. Cert. ¶ 7.)  Further the Sandoval Defendants claim that none of the other parties would be unduly prejudiced by their proposed amendments because they do not change the basic nature of the Third-Party Complaint. (Espinosa. Cert. ¶ 9.)  Moreover, the Sandoval Defendants note that the events described in their proposed Amended Third-Party Complaint relate to the same scheme detailed in Plaintiffs' Complaint and their initial Third-Party Complaint and Cross-claim. (*See* Sandoval Defs. Nov. 27, 2006 Reply Br. 4-5; Sandoval Defs. Aug. 9, 2007 Additional Sur-Reply 1-2.)  They further argue that despite Plaintiffs' and Third-Party Defendants' claims to the contrary, the claims asserted in the proposed Amended Third-Party Complaint are not barred by the applicable statute of limitations. (*See generally* Sandoval Defs. Nov. 27, 2006 Reply Br.; Sandoval Defs. Dec. 3, 2006 Sur-Reply; Sandoval Defs. Aug. 9, 2007 Additional Sur-Reply.)

On November 20, 2006, Plaintiffs and Third-Party Defendants Myrlak, Perselay, Antun and Murray filed a memorandum of law in opposition to the Sandoval Defendants' Motion to Amend.  The main thrust behind their opposition is that the Sandoval Defendants' Motion to Amend should be denied because the Sandoval Defendants' proposed amendments are futile under FED.R.CIV.P. 15(a) and because the claims asserted in the proposed Amended Third-Party Complaint do not meet the requirements of FED.R.CIV.P. 14(a), which governs third-party practice.  Plaintiffs and Third-Party Defendants Myrlak, Perselay, Antun and Murray argue that

the Sandoval Defendants' proposed amendments are futile because the claims they seek to bring against Senator Menendez and Mr. Ruiz are time-barred and because Senator Menendez and Mr. Ruiz are unnecessary parties. (Pl. Opp. Br. 5-12.) Further, they argue that the Sandoval Defendants' proposed amendments do not satisfy FED.R.CIV.P. 14(a) because the proposed amendments do not relate to the original allegations asserted against Third-Party Defendants, and, as such, would in no way provide the Sandoval Defendants with indemnity for their actions. (Pl. Opp. Br. 4-5;13-14.)

On November 28, 2006, Third-Party Defendant Donald Scarinci filed a brief in opposition to the Sandoval Defendants' Motion to Amend. At the outset, the Court notes that Mr. Scarinci filed his brief eight days late. The Court further notes that Mr. Scarinci filed his opposition brief late, despite the fact that the Sandoval Defendants' had previously consented to adjourning their Motion to Amend for one motion cycle. The Court assumes that Mr. Scarinci's late filing occurred as a result of an unintentional oversight or miscalculation of time and was not the byproduct of a willful disregard for the Federal Rules.[3] As such, the Court will consider Mr. Scarinci's opposition, though it notes that even if that opposition were not part of the record, the Court would reach the same decision discussed below.

---

[3]The Court reminds all parties of the need to abide by the Federal Rules of Civil Procedure as well as the Local Civil Rules. Mr. Scarinci's late filing is not the only instance of rule-breaking observed by the Court. For example, the Sandoval Defendants effectively filed two sur-replies without seeking the Court's permission: one on December 3, 2006 in response to Mr. Scarinci's late filing and the second on August 9, 2007, again in response to Mr. Scarinci's late filing. While the Court appreciates the Sandoval Defendants' desire to respond to Mr. Scarinci's opposition and would have granted a request to do so had one been made, having filed a Letter Brief on November 27, 2006 in further support of their Motion to Amend their Third-Party Complaint, the Sandoval Defendants were not entitled to file an additional sur-reply (and certainly not two of them) without first obtaining the Court's permission. *See* Local Civ. R. 7.1(d)(6). Nevertheless, the Court has considered both of those filings in reaching its decision.

Mr. Scarinci, like the Plaintiffs and other Third-Party Defendants, opposes the Sandoval Defendants' Motion to Amend based on Rules 14(a) and 15(a) of the Federal Rules of Civil Procedure.  Specifically, Mr. Scarinci argues that the Sandoval Defendants' Motion should be denied because even if their allegations against Senator Menendez and Mr. Ruiz were true, those allegations do not form a basis on which the Sandoval Defendants can seek indemnification for the claims made against them in the underlying Complaint as required by FED.R.CIV.P. 14(a).  (Scarinci Opp. Br. 5.)  Mr. Scarinci also argues that the Sandoval Defendants' Motion should be denied because the proposed amendments are futile, as they are time-barred, and therefore fail to meet the requirements of FED.R.CIV.P. 15(a).  (Scarinci Opp. Br. 6-9.)

II.     **Discussion**

The Sandoval Defendants' Motion to Amend their Third-Party Complaint involves an intersection of FED.R.CIV.P. 15(a), which governs motions to amend the pleadings, and FED.R.CIV.P. 14(a), which governs third-party practice.  Pursuant to FED.R.CIV.P. 15(a), leave to amend the pleadings is generally "freely given." *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, the decision of whether to grant or deny a motion to amend rests within the sound discretion of the Court, and a Court will appropriately exercise that discretion to deny a motion to amend where it "is apparent from the record that (1) the moving party has demonstrated undue delay, bad faith or dilatory motives, (2) the amendment would be futile, or (3) the amendment would prejudice the other party." *Hill v. City of Scranton*, 411 F.3d 118, 134 (3d Cir. 2005)*; see Foman*, 371 U.S. at 182; *Alvin v. Suzuki*, 227 F.3d 107, 121 (3d Cir. 2000).  Here there is no evidence of undue delay, bad faith or dilatory motives on the part of the Sandoval Defendants.  Similarly, it does not appear that the Sandoval Defendants' proposed amendments would unduly

prejudice any other party. As a result, the Sandoval Defendants' proposed Amended Third-Party Complaint must necessarily rise or fall based on the alleged futility of the proposed amendments.

"An amendment is futile if the amended [third-party] complaint would not survive a motion to dismiss[.]" *Alvin*, 227 F.3d at 121. Whether the Sandoval Defendants' proposed Amended Third-Party Complaint would survive a motion to dismiss depends in the first instance on whether it meets the requirements set forth in FED.R.CIV.P. 14(a), which governs third-party practice. Rule 14(a), also known as the impleader rule, allows a defendant to bring into a lawsuit any "person not a party to the action who is or may be liable to the third-party plaintiff for all or part of the plaintiff's claim against the third-party plaintiff." As is clear from the plain language of this Rule, a third-party claim may only be asserted under Rule 14(a) "when the third party's liability is in some way dependent on the outcome of the main claim or when the third party is secondarily liable to [the] defendant." 6 CHARLES ALAN WRIGHT, ARTHUR MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE 2d § 1446 (2007). Thus, while Rule 14(a) is generally "liberally construed to avoid duplicative litigation, ... [i]mpleader is proper only to assert a derivative claim against the third-party defendant." 3 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE 3d ¶ 14.04 (2007). Indeed, as noted by the Court in *Erkins v. Case Power & Equip. Co.*, "there are limits to the types of claims for which impleader is permissible. A defendant may only use Rule 14 to implead a third-party defendant where the third-party defendant is or may be liable to the defendant 'derivatively or secondarily[.]'" 164 F.R.D. 31, 32 (D.N.J. 1995) (quoting *DeMaio v. Cigna Corp.*, Civ. A. No. 89-0724, 1990 WL 117976, at *2 (E.D. Pa. 1990)).

Further, "[t]he mere fact that the alleged third-party claim arises from the same

transaction or set of facts as the original claim is not enough." 6 CHARLES ALAN WRIGHT, ARTHUR MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE 2d § 1446 (2007); *see* 3 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE 3d ¶ 14.04 (2007) (noting that test for joinder of third-party under Rule 14(a) is not transactional and therefore differs from standards for compulsory counterclaims and cross-claims). Instead, impleader is narrower. Rule 14(a) requires a third-party plaintiff to "set forth a claim of secondary liability such that, if the third-party plaintiff is found liable, the third-party defendant will be liable to him under a theory of indemnification, contribution or some other theory of derivative liability recognized by the relevant substantive law." *Wallkill 5 Assoc. II v. Tectonic Eng'g, P.C.*, Civ. A. No. 95-5984, 1997 U.S. Dist. LEXIS 11694, * at 26 (D.N.J. July 24, 1997); *see Federal Deposit Ins. Corp. v. Bathgate*, 27 F.3d 850, 873 (3d Cir. 1994) (holding that defendants' pleading did not qualify as third-party complaint under Rule 14(a) because alleged third-party defendants' liability was not derivative of the defendants' liability); *Erkins*, 164 F.R.D. at 32 (finding that impleader is only appropriate where third-party defendant is or may be derivatively or secondarily liable to defendant).

Here the only causes of action that the Sandoval Defendants propose to assert against Senator Menendez and Mr. Ruiz are based on their alleged violations of the federal RICO statute. As written, these claims do not sound in contribution or indemnification or any other type of derivative liability, but instead seek to hold Senator Menendez and Mr. Ruiz liable for RICO violations independent of any liability that the Sandoval Defendants may face based on Plaintiffs' Complaint. Because the Sandoval Defendants' Proposed Amended Third-Party Complaint does not assert derivative claims against Senator Menendez and Mr. Ruiz, it fails to satisfy the

requirements of Rule 14(a).

Moreover, the mere fact that the Sandoval Defendants' proposed Amended Third-Party Complaint is not "totally unrelated" to the set of circumstances raised in the Complaint and Third-Party Complaint and Cross-claim, but rather concerns the "same criminal scheme" alleged therein (Sandoval Defs. Reply Br. 4), does not save it.  As already stated, the test for joinder of a third-party under Rule 14(a) is not transactional; it requires derivative or secondary liability.  *See* 6 CHARLES ALAN WRIGHT, ARTHUR MILLER, MARY KAY KANE, FEDERAL PRACTICE AND PROCEDURE 2d § 1446 (2007); 3 JAMES WILLIAM MOORE ET AL., MOORE'S FEDERAL PRACTICE 3d ¶ 14.04 (2007).  Thus, because the proposed Amended Third-Party Complaint does not assert any claims of derivative or secondary liability, it does not meet the requirements of Rule 14(a), and as such would not survive a motion to dismiss, thereby rendering the proposed amendments futile.

Further, even if the Court were to attempt to construe the Sandoval Defendants' proposed amendments as setting forth a derivative claim against Senator Menendez and Mr. Ruiz under the federal RICO statute (which on their face they do not), the proposed amendments would still fail because "there is no right to contribution or indemnification under the RICO statutes[.]" *Feldman v. Sergeant*, Civ. A. No. 89-3990, 1990 WL 74477, *at 2 (D.N.J. June 4, 1990) (dismissing third-party complaint to extent it sought indemnification or contribution under RICO statutes).  The issue of whether a common law right to contribution exists under the federal civil RICO statutes was first examined in *Boone v. Beacon Bldg. Corp.* 613 F. Supp. 1151, 1153 (D.C.N.J. 1985).  In *Boone*, the Court noted that "[u]nder a federal statute, a right to contribution may arise in one of two ways: either (1) by the express language of a statute or the statute's clear implication,

9

looking to its legislative history, the identity of the class for whose benefit the statute was enacted, and the overall legislative scheme; or (2) through the power of federal courts to fashion a common law of contribution." *Id.* at 1154. Because Congress did not expressly authorize a contribution provision in the RICO statutes, the Boone Court examined whether RICO's clear implication created such a right. *Id.*

In determining whether there was an implied right to contribution in the RICO statutes, the Boone Court noted the similarities between RICO and the antitrust laws (particularly the Clayton Act, which provides for treble damages and the award of attorney's fees). *Id.* The Boone Court relied upon the Supreme Court's analysis in *Texas Industries v. Radcliff Materials*, 451 U.S. 630 (1981), which held that there was no right to contribution under the antitrust laws, in reaching its own conclusion that the civil RICO statutes do not create an implied right to contribution. *Id.* The Boone Court found particularly persuasive the Supreme Court's reasoning in *Texas Industries*, that "[t]he very idea of treble damages reveals an intent to punish past, and deter future, unlawful conduct, not to ameliorate the liability of wrongdoers. The absence of any reference to contribution in the legislative history or of any possibility that Congress was concerned with softening the blow on joint wrongdoers in this setting makes examination of other factors unnecessary." *Id.* (quoting *Texas Industries*, 451 U.S. at 639).

This Court finds the reasoning of *Boone* persuasive and finds that RICO contains no affirmative creation (either by its express language or clear implication) of a right to contribution. Further, this Court is disinclined "to fashion a common law of contribution." *Boone*, 613 F. Supp. at 1154. Instead, this Court concurs with the decision reached in *Feldman*, where the Court refused to exercise its inherent power to "fashion a right to contribution" among RICO

wrongdoers." 1990 WL 74477, at *2. Specifically, this Court agrees with *Feldman's* analysis that it is not necessary to develop the substantive law of contribution in this context in order to "'protect uniquely federal interests.'" *Id.* at *2 (quoting *Texas Industries*, 451 U.S. at 640). As in *Feldman*, this Court finds it obvious "that contribution among RICO wrongdoers does not involve 'the duties of the Federal Government, the distribution of powers in our federal system, or matters necessarily subject to federal control even in the absence of statutory authority.'" *Id.* (quoting *Texas Industries*, 451 U.S. at 642). For these reasons, the Court finds that there is no right to contribution under RICO.[4]

[4]The Court notes that its decision is consistent with that of other Courts that have examined this issue. *See*, *e.g.*, *Feldman*, 1990 WL 74477, at *2 (dismissing Third-Party Complaint to extent it sought contribution or indemnification for liability under RICO); *THC Holdings Corp. v. Tishman*, Nos. 93 Civ. 5343 (KMW), 95 Civ. 4422, 1998 WL 305639, at *2 n.1 (S.D. N.Y. June 9, 1998) (dismissing contribution and indemnification claims because there is no such right under RICO); *Friedman v. Hartmann*, 787 F. Supp. 411, 415 (S.D.N.Y. 1992) (finding that no right to indemnification or contribution arises under RICO); *Academic Indus., Inc. v. Untermeyer Mace Partners, Ltd.*, No. 90 Civ. 1052 (LBS), 1992 WL 73473, at *6 (S.D.N.Y. April 1, 1992) (same); *O & K Trojan, Inc. v. Municipal & Contractors Equip. Corp.*, 751 F. Supp. 431, 433 (S.D.N.Y. 1990) (holding that defendant may not seek contribution for RICO liability); *Department of Econ. Dev. v. Arthur Andersen & Co. (U.S.A.)*, 747 F. Supp. 922, 931-932 (S.D.N.Y. 1990) (same); *Minpeco, S.A. v. Conticommodity Services, Inc.*, 677 F. Supp. 151, 154-155 (S.D.N.Y. 1988) (holding that there is no right to contribution under RICO); *First American Corp. v. Al-Nahyan*, 948 F. Supp. 1107, 1118 (D.D.C. 1996) (noting that courts have uniformly denied contribution and indemnification claims under RICO); *Estate of Bayes, by Froehner v. Liberati*, Civ. A. No. 88-4182, 1990 WL 83337, at *2 (E.D. Pa. June 15, 1990) (noting that numerous courts have held that claims for contribution and indemnification are not permitted under RICO); *In re Olympia Brewing Co. Sec. Litig.*, 674 F. Supp. 597, 616-617 (N.D. Ill. 1987) (denying reconsideration of order dismissing RICO claims for contribution and indemnification); *Miller v. Affiliated Fin. Corp.*, 624 F. Supp. 1003, 1004 (N.D. Ill. 1985) (denying amendments seeking contribution under RICO); *Central Illinois Sav. & Loan Ass'n v. Dupage County Bank of Glendale Heights*, 622 F. Supp. 1493, 1498 (N.D. Ill. 1985) (holding that defendant subject to RICO liability cannot obtain indemnification); *Nelson v. Bennett*, 662 F. Supp. 1324, 1338 n.23 (E.D. Cal. 1987) (holding that "no rights of contribution are available" under RICO); *Jacobson v. Western Montana Production Credit Ass'n*, 643 F. Supp. 391, 396 (D. Mont. 1986) (holding that contribution and indemnification actions cannot be maintained under RICO); *Seminole Elec. Co-op., Inc. v. Tanner*, 635 F. Supp. 582, 583 (M.D. Fla. 1986) (same).

Similarly, the Court finds that there is no right to indemnification under RICO. Whether a right to indemnification exists under a federal statute is governed by the same analysis as that applied above. *See Boone*, 613 F. Supp. at 1154; *Feldman*, 1990 WL 74477, at *3. As with contribution, the RICO statute does not expressly provide for indemnification. Further, the Court finds that RICO does not clearly implicate a right to indemnification.

In determining Congress' intent with respect to a statute, the Court looks to several factors, including "the legislative history and purposes of the statute, the identity of the class for whose particular benefit the statute was passed, the existence of express statutory remedies adequate to serve the legislative purpose, and the traditional role of the states in affording the relief claimed." *Daily Income Fund, Inc. V. Fox*, 464 U.S. 523, 536 (1984); *see Feldman*, 1990 WL 74477, at *3. Examining these factors, the Court finds no Congressional intent to allow a right to indemnification for RICO defendants. Nothing in RICO's legislative history suggests that Congress intended to imply a right to indemnification. Additionally, "RICO was not enacted to benefit a special class consisting of RICO defendants" (*Feldman*, 1990 WL 74477, at *3); rather, "RICO was enacted to protect society from their destructive conduct." *Id*. Indeed, RICO's treble damages provision indicates Congress' "intent to punish and not to diminish the liability" of RICO defendants. *Id.* (citing *Texas Industries*, 451 U.S. at 639). As a result, the Court agrees with the conclusion in *Feldman* that to allow a defendant "to seek indemnification would contravene the clear Congressional intent displayed by the RICO statutory scheme." 1990 WL 74477, at *3. In addition, for the same reasons discussed above, the Court is disinclined to fashion a common law of indemnification in this context. As a result, the Court finds that there

is no right to indemnification under RICO.[5]

Accordingly, the Court finds that the Sandoval Defendants' proposed amendments are futile and denies their Motion to file an Amended Third-Party Complaint.[6]

III.     **Conclusion & Order**

For the foregoing reasons, the Court will deny the Sandoval Defendants' Motion to file an Amended Third-Party Complaint.  The Court will also dismiss as moot the Sandoval Defendants' Motion for Reconsideration of the Court's April 18, 2007 Order dismissing without prejudice the Sandoval Defendants' Motion to Amend their Third-Party Complaint, pending the Court's conclusion of settlement discussions.

THEREFORE, IT IS on this 13th day of September, 2007,

ORDERED that the Sandoval Defendants' Motion to Amend [Docket Entry No. 107] is DENIED; it is further

ORDERED that the Sandoval Defendants' Motion for Reconsideration [Docket Entry No. 120] is DISMISSED AS MOOT; and it is further

ORDERED that the Clerk of the Court terminate these motions accordingly.

　　　　　　　　　　　　　　　　　　     /s/   Tonianne J. Bongiovanni          
**HONORABLE TONIANNE J. BONGIOVANNI**
**UNITED STATES MAGISTRATE JUDGE**

---

[5] As with its previous holding, the Court notes that other Courts that have examined this issue have similarly held that there is no right to indemnification under RICO.  *See supra* note 4 at 11.

[6] The Court notes that much of the briefing filed with this Motion concerned whether the Sandoval Defendants' proposed amendments would be futile based on the running of the relevant statute of limitations.  Because the Court finds that the proposed amendments are futile regardless of whether they are time-barred, the Court finds it unnecessary to decide this issue.